IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIC BUTERA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**TANNER MACIOCE AND CODY MACIOCE**, individually and doing business as Macioce Holdings,<br><br>*Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Eric Butera ("Plaintiff Butera" or "Butera") brings this Class Action Complaint and Demand for Jury Trial against Defendants Tanner Macioce and Cody Macioce, individually and doing business as Macioce Holdings ("Defendants" or "Macioce Holdings"), to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Butera, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Butera is a resident of Millcreek, Utah.

2. Defendants Tanner Macioce and Cody Macioce are individuals who operate an unregistered general partnership under the name Macioce Holdings, headquartered at 1332 Oxford St, Crafton, Pennsylvania 15205-3817.

1

3. Defendant Tanner Macioce resides in Pittsburgh, Pennsylvania.

4. Defendant Cody Macioce resides in Pittsburgh, Pennsylvania.

5. Defendants conduct business throughout this District and other parts of the US, including Utah, through Macioce Holdings.

6. Plaintiff Butera is a resident of Millcreek, Utah.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

8. This Court has personal jurisdiction over the Defendants because they reside in or conduct business from this District through Macioce Holdings, which is located in Crafton, Pennsylvania.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants are located in this District and directed the violative conduct from this District to the Plaintiff.

## INTRODUCTION

10. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

11. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

12. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

13. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

14. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in April 2024 alone, at a rate of 146.9 million per day. www.robocallindex.com (last visited May 12, 2024).

15. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

17. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3

**COMMON ALLEGATIONS**

18. Macioce Holdings is an unregistered general partnership operated by Defendants Tanner Macioce and Cody Macioce. It is not a registered corporation, limited liability company, or other distinct legal entity under Pennsylvania law. As such, Defendants Tanner Macioce and Cody Macioce are personally liable, jointly and severally, for all actions, obligations, and violations of Macioce Holdings, including those alleged herein, pursuant to Pennsylvania partnership law (15 Pa.C.S. § 8311 et seq.).

19. Defendants, through Macioce Holdings, operate as home buyers that purchase homes from consumers.

20. Defendants place calls, or cause calls to be placed, through Macioce Holdings to solicit their home buying solutions.

21. Defendants place telemarketing calls to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

22. The calls that Defendants place to consumer phone numbers are solicitations.

23. Property buyers like Defendants, operating as Macioce Holdings, purchase properties for cash, offering less money than what the property is valued at.

24. In the property buying industry, buyers follow what is known as the 70% rule. This rule is a formula commonly used by real estate buyers so a profit can be earned on a property purchase. Property buyers will typically offer 70% of the after-repair value ("ARV") for a property:

## The 70% Rule Further Explained

The 70% rule states that real estate investors shouldn't pay more than 70% of the ARV minus the repairs needed. For example, if a house is $150,000 and needs $20,000 in repairs, the 70% rule states that no more than $85,000 should be paid. The math looks like this:

- $150,000 (ARV) x .70 (ARV percentage) = $105,000
- $105,000 − $20,000 (ERC) = $85,000 (buying price)

[3]

25. As a result of the above, the consumer is incurring a cost based on the depreciated value of the property.

26. In response to these phone calls, Plaintiff Butera brings forward this case seeking injunctive relief requiring the Defendants to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF BUTERA'S ALLEGATIONS**

27. Plaintiff Butera is the sole owner and user of his cell phone number ending in 7418.

28. Plaintiff Butera registered his cell phone number on the DNC on June 6, 2015.

29. Plaintiff Butera uses his cell phone number for personal use only as one would use a landline telephone number in a home. Such use includes speaking to family and friends.

30. Plaintiff Butera's cell phone number is not associated with a business and is not used for business-related purposes.

31. Plaintiff Butera pays for the use of his cell phone personally. It is not reimbursed by a business.

32. On January 15, 2025 at 2:22 PM, Plaintiff Butera received an unsolicited call to his cell phone from 412-910-8238.

---

[3] https://www.biggerpockets.com/forums/67/topics/1214017-what-is-the-70-rule-in-house-flipping

5

33. When Plaintiff Butera answered this call, he was told the call was from Matt or Max.

34. The caller asked about a property in Ohio, questioning whether Plaintiff would be willing to sell the property.

35. When 412-910-8238 is called, an automated system identifies the company name Macioce Holdings and the name Tanner.[4]

36. Tanner Macioce is the partner of Macioce Holdings:



Macioce Holdings is run by Cody and Tanner Macioce. As former financial professionals and current business owners, we value the personal interaction and day to day communication with everyone we do business with. We look forward to working with you on a first name basis and providing the best possible solution for your situation.

[5]

37. On January 15, 2025 at 3:12 PM, Plaintiff Butera received a 2nd unsolicited call to his cell phone, this time from 216-477-4790.

38. This call was not answered, but Plaintiff Butera called 216-477-4790 at 3:40 PM on January 15, 2025.

39. Plaintiff Butera was connected to the same employee he had spoken to earlier that day.

---

[4] Based in an investigation conducted by Plaintiff's attorneys.
[5] https://macioceholdings.com/about-us/

6

40. Plaintiff Butera began asking questions again to determine why he was being called, but the employee disconnected the call.

41. When 216-477-4790 is called, an automated system identifies the company name Macioce Holdings and the name Tanner.[6]

42. On February 11, 2025 at 10:15 AM, Plaintiff Butera received a 3rd unsolicited call to his cell phone from 216-477-4778.

43. This call was not answered.

44. Plaintiff Butera called 216-477-4778 back at 10:26 AM on February 11, 2025.

45. Plaintiff Butera was connected to an employee named Jack who explained that the call was regarding the purchase of a property in Ohio.

46. Jack gave the address of the property, which is a property owned by Plaintiff's mother.

47. Plaintiff began asking Jack about how Jack acquired his contact information about a property he doesn't even own, but Jack disconnected the call.

48. Plaintiff Butera called 216-477-4778 back again at 11:31 AM to find out more information about why he was receiving calls about his mother's property.

49. Plaintiff Butera also wanted to make sure that the callers would not call his mother.

50. Plaintiff got through to an employee, but the call was quickly disconnected by the employee.

51. When 216-477-4778 is called, an automated system identifies the company name Macioce Holdings and the name Tanner.[7]

---

[6] Based in an investigation conducted by Plaintiff's attorneys.
[7] Based in an investigation conducted by Plaintiff's attorneys.

52. On February 11, 2025 at 11:49 AM, Plaintiff Butera received an unsolicited call to his cell phone from 412-547-6092.

53. When Plaintiff answered this call, an employee named Max said that he was calling about the Ohio property and wanted to know if Plaintiff was considering selling it.

54. Plaintiff Butera was told that the company name is Macioce Holdings.

55. Plaintiff Butera explained that his cell number is registered on the DNC, but Max spoke over him, asking questions about the property.

56. Plaintiff demanded to know what Macioce Holdings was doing with his mother's property address, but Max disconnected the call.

57. Plaintiff Butera called 412-547-6092 back at 11:52 AM and got through to Max.

58. Plaintiff Butera wanted to know why he was receiving calls about a property he doesn't even own, and he wanted to make sure Macioce Holdings would not call his mother.

59. In response, Max disconnected the call.

60. Plaintiff Butera called 412-547-6092 again at 11:55 AM, but it was quickly disconnected by whoever answered the call.

61. Plaintiff Butera called 412-547-6092 again at 11:55 AM and the call was answered once more by Max.

62. Plaintiff Butera began asking questions, voicing his concerns about receiving unsolicited calls, but Max disconnected the call.

63. Plaintiff Butera called 412-547-6092 back at 11:56 AM. The call was answered by Max.

64. Again, Plaintiff Butera asked questions about the unsolicited calls, but Max disconnected the call.

65. Plaintiff Butera called 412-547-6092 a few more times, but the calls were not answered.

66. Plaintiff Butera has never done business with Macioce Holdings or consented to be called by them.

67. The calls that Plaintiff Butera received caused him distress, as he was concerned about the safety of his elderly mother. Plaintiff was worried that his mother could be tricked into selling her property due to her dementia.

68. The unauthorized solicitation calls that Plaintiff received from or on behalf of Defendants have harmed Plaintiff Butera in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

69. Seeking redress for these injuries, Plaintiff Butera, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

70. Plaintiff Butera brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants Tanner Macioce and Cody Macioce, through Macioce Holdings, called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendants called Plaintiff.

71. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class;

9

(5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Butera anticipates the need to amend the Class definition following appropriate discovery.

72. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

73. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendants Tanner Macioce and Cody Macioce, through Macioce Holdings placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

74. **Adequate Representation**: Plaintiff Butera will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Butera has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff Butera and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Butera nor his counsel have any interest adverse to the Class.

75. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Butera. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
Telephone Consumer Protection Act
(Violations of 47 U.S.C. § 227)
(On Behalf of Plaintiff Butera and the Do Not Call Registry Class)

76. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

77. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

78. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

79. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Butera and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

80. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Butera and the Do Not Call Registry Class received more than one call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

81. As a result of Defendants' conduct as alleged herein, Plaintiff Butera and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

82. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

    d)   An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

    e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Butera requests a jury trial.

**ERIC BUTERA**, individually and on behalf of all others similarly situated,

DATED this 24th day of April, 2025.

By: /s/ *Andrew Carroll*

Andrew Carroll
AndrewCarrollEsq@gmail.com
Carroll Law Firm, P.C.
427 N. Packard St
Hammonton, NJ 08037-1941
(856) 426-9815

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*